**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| VS. | § | CRIMINAL ACTION NO. 4:16-CR-527 |
| | § | |
| **MARK DANIEL ADAIR** | § | |

## MEMORANDUM AND ORDER

Defendant Mark Daniel Adair ("Defendant") is charged by indictment with three counts of child pornography. Defendant has filed a "Motion to Suppress His Statement." Dkt. No. 39 (hereafter, "Motion"). Specifically, Defendant contends that he never intentionally and voluntarily waived his rights to obtain counsel under *Miranda v. U.S.*, 384 U.S. 436 (1966). Alternatively, Defendant claims that the interrogation carried out by law enforcement officers violated his due process rights.

### I. FACTUAL BACKGROUND

There is no dispute as to most of the material facts. This case had its origin on December 16, 2015, when FBI Special Agent Robert Guerra ("Guerra") used a computer connected to the Internet and identified a computer on a peer-to-peer sharing network as having at least 35 files of investigative interest. On that same day, Guerra downloaded 35 video files containing images of child pornography. Through further investigation, Guerra was able to determine that the computer in question was located at the residence of Defendant.

On February 26, 2016, at approximately 6:15 a.m., a federal search warrant was executed on Defendant's residence. A total of ten law enforcement officers were present, and were identifiable by their clothing. In approaching the home, seven of the officers had their weapons drawn. Without having made contact with Adair, the officers broke through a locked gate. Once

they had reached the front door, Guerra knocked, identified himself as an FBI agent, and said that he and the other officers were there to execute a search warrant.

Defendant was the sole resident of the home. When Defendant opened the door, Guerra instructed him to hold his hands up, and to leave the residence. Then, Guerra and others went into the home to perform a sweep. Defendant was turned over to local law enforcement officers who handcuffed him and put him in their SUV which was parked in the driveway. Defendant was wearing only his boxer shorts.

Defendant had remained in the vehicle for 15 to 20 minutes, when Guerra brought some clothes to Defendant and took him out of the vehicle. Defendant was allowed to put on the clothing, the cuffs were removed, and Guerra introduced himself. He apologized for having had to handcuff Defendant, and told him that he was not under arrest. At some point, Defendant said he needed to use the bathroom, and an officer went with him to the bathroom and watched him urinate.

Guerra escorted Defendant to Guerra's unmarked vehicle in front of the home. Guerra sat in the driver's seat and another agent sat behind Defendant in the rear passenger side seat. Defendant was told that the agents did not plan to take him anywhere. Defendant began talking, and Guerra interrupted him to provide Miranda warnings, even though, in Guerra's opinion, Defendant was not in custody. The warnings were provided, Guerra said, "out of an abundance of caution." Docket No. 48 at 19. Guerra told Defendant that he was reading the Miranda rights as a "formality." *Id.* at 22. Defendant acknowledged that he understood his rights, but did not say whether he did or did not waive them. Guerra's entire conversation with Defendant was videotaped, but Defendant was not told of the videotaping. Docket No. 49 at 36.

At one point, Defendant said "'I mean, am I screwing myself by not getting a lawyer? Be

honest.'" Docket No. 48 at 23. Guerra responded that his job was to investigate this particular violation and to determine whether the perpetrator just had an interest in seeing images, or might actually harm a child. *Id.* at 25. At some point, Defendant said he was being straight with Guerra because Guerra was being straight with him. *Id.* at 27. During the course of the session in the parked car, Defendant admitted to the elements of the pornography charges that were ultimately brought. *Id.* at 20. He also said enough to warrant application of several of the sentencing guideline enhancements for child pornography. *Id.* at 72 - 73. At the evidentiary hearing, Guerra acknowledged that he did not tell Defendant that he was facing a mandatory minimum of five years imprisonment, or anything about the operation of the sentencing guidelines. *Id.* at 30 - 31. Instead, Guerra told Defendant that talking to the law enforcement officers "really helps you." Docket No. 49 at 37. Indeed, Defendant was even told that the interrogation in the car was "your one time chance to tell us your side of the story and what exactly is going on." *Id.*

Guerra also told Defendant at one point that, at the end of the day, he was not going to arrest Defendant and that Defendant would go his way and the law enforcement officers would go their way. *Id.* at 69 - 70.

## II. LEGAL STANDARDS

The Government contends that Defendant was never in custody and was always free to leave. Because he was not in custody, Miranda warnings did not need to be given. *U.S. v. Hurtado,* 899 F.2d 371, 375 (5th Cir. 1990).

The Court is extremely dubious of the Government's argument. On the issue of custodial interrogation, and the applicability of *Miranda*, *U.S. v. Romero-Medrano*, 207 F.Supp. 708 (S.D. Tex. 2016), is more closely analogous. That case, in which defendant's statement was suppressed, also involved Agent Guerra as the chief interrogator.

A lengthy analysis of precedents on custodial interrogation is, however, not necessary. Rather, the more pertinent analysis is under the due process clause. The Government can violate due process strictures whether or not a defendant is in custody. Under due process, a confession is inadmissible if "involuntary, i.e., the product of coercion, either physical or psychological." *Colorado v. Connelly,* 479 U.S. 157, 169 (1986). Long before *Miranda*, the Supreme Court made clear that, "We do not presume acquiescence in the loss of fundamental rights." *Johnson v. Zerbst*, 304 U.S. 458, 465 (1938). "The purpose of the constitutional guaranty of a right to counsel is to protect an accused from conviction resulting from his own ignorance of his legal and constitutional rights, and the guaranty would be nullified by a determination that an accused's ignorant failure to claim his rights removes the protection of the Constitution." *Id.* at 465. *See also Moore v. Michigan*, 355 U.S. 155 (1957) (vacating murder conviction because no showing of intelligent waiver of counsel). Informing a suspect immediately after arrest that exercise of his right to remain silent might result in harsher treatment renders subsequent statements by the suspect inadmissible and sufficient grounds to vacate a conviction. *U.S. v. Harrison*, 34 F.3d 886 (9th Cir. 1994).

The Government's conduct in this case is impossible to square with even minimum constitutional protections:

    1. Agent Guerra offered Miranda warnings as simply "a formality."

    2. No waiver of the right against self-incrimination was requested or obtained.

    3. When asked by Defendant whether he was "screwing" himself by talking without the presence of a lawyer, Guerra told Defendant that, if he did not talk, Guerra would assume the worst, i.e., that he might cause physical harm to a child.

    4. In other words, Guerra said that talking to him was the only way that Defendant could

help himself.

     5. The officers also signaled that this was Defendant's one chance to help himself.

     6. Guerra's interrogation caused Defendant to incriminate himself as to the elements of the felony charge, but also as to several enhancements under the sentencing guidelines.

     7. Guerra offered that, at the end of the day, Defendant would go one way and law enforcement officers another, when he knew that serious punishment was the all-but-certain result.

     Stated simply, no one acting in the name of the United States should ever engage in such conduct – deceptive at best, and also seriously coercive. Defendant's Motion to Suppress as to his statements to law enforcement officers on February 26, 2016, is **GRANTED**. Defendant does not seriously challenge the information gleaned by the Government from the Internet and, as to that information, Defendant's Motion to Suppress is **DENIED**.

     **IT IS SO ORDERED**.

     SIGNED this 8th day of January, 2018.

                                               */s/ Keith P. Ellison*
                                               KEITH P. ELLISON
                                             UNITED STATES DISTRICT JUDGE